

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

QUINTEZ TALLEY,
MINORITIES OF PENNSYLVANIA,
Pa. AMERICANS WITH DISABILITIES,
                              Plaintiffs,

V.

SUPREME COURT OF PENNSYLVANIA,
CENTRE COUNTY'S COURTHOUSE,
DISTRICT ATTORNEY'S OFFICE OF CENTRE COUNTY,
CENTRE COUNTY'S DEFENDER ASSOCIATION,
Pa. DEPARTMENT OF CORRECTIONS,
Pa. STATE POLICE,
HARRISBURG REGIONAL LABORATORY,
SCI-BENNER TOWNSHIP'S SECURITY DEPARTMENT,
SCI-ROCKVIEW'S SECURITY DEPARTMENT,
TAMMY FERGUSON,
LT. WILLIAM FOSTER,
CAPT. GLENN IRWIN,
THOMAS SUCHTA,
ROBERT HEWITT,
THOMAS GERALD LUKENS,
DAVID PATRICK LINK,
MICHAEL WORSTELL,
MICHAEL LEFEBVRE,
BERNARD KARABINOS,
ROBERT WILLIAMSON,
STEPHEN PROUDFIT,
AMY ████████,
JOSHUA GLESSNER,
BRIAN WAKEFIELD,
THOMAS M. STOCK,
THOMAS KING PUBLER,
JONATHAN D. GRINE,



3:17-CV-1632

CIVIL ACTION No. _____

**FILED**
**SCRANTON**

SEP 1 2 2017

Per_____
       DEPUTY CLERK

❊ JURY TRIAL DEMANDED



RECEIVED
DEC 20 2016

1

PAMELA A. RUEST,
BRADLEY P. LUNSFORD,
J. MICHAEL WILLIAMSON,
STACY PARKS-MILLER,
LINDSEY CATHERINE FOSTER,
DANIEL MCKENRICK,
DAVID CROWLEY,
CASEY McCLAIN,
GABRIEL L. IIMAS,
JEFFREY A. WAGNER,

                    Defendants.

## COMPLAINT

Plaintiff Quintez Talley brings this Complaint, commencing civil action, against the thirty-seven (37) Defendants named herein whom make up Defendant Supreme Court of Pennsylvania, et al., and states as follows:

## I. JURISDICTION AND VENUE

1. This is a civil action authorized by 42 USC § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The Court has Jurisdiction under 28 USC § 1331, 1343(a)(3)&(4), and 1367. Plaintiff Talley's claims for insunctive relief are authorized by 28 USC § 2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedure. Plaintiff Talley seeks declaratory relief pursuant to 28 USC § 2201 and 2202;

    * Plaintiff(s) American with Disabilities Act ("ADA") claims are authorized by 42 USC § 12101 - 12213. NOTE: These ADA claims can too be seen (authorized) under 42 USC § 1983, also (when appropriate).

2. The Eastern District of Pennsylvania is an appropriate venue under 28 USC § 1391(b)(3) because it is "a judicial district in which any (of the) defendants (i.e., Supreme Court of Pennsylvania) may be found."

## II. PARTIES

3. Plaintiff Quintez Talley, an African-American male, formerly a resident of Philadelphia, Pennsylvania, was at all times mentioned/relevant to this Complaint also diagnosed by the PA Department of Corrections, on it's four-point nominal scale for rating the mental health needs of inmates as a "D" stability inmate, i.e., in the most serious need of mental health services.

4. Plaintiff Minorities of Pennsylvania ("M.P.") represent any persons) outside of the Caucasian race whom, as citizens of the Common-wealth of Pennsylvania, could find themselves criminally prosecuted in any Common Pleas Court of Pennsylvania and subjected to being tried by venires which represent no one of their ethnicity.

5. Plaintiff Pa. Americans with Disabilities represent the class of People whom may find themselves criminally prosecuted in any Common Pleas Court of Pennsylvania and possibly being discriminated i.e., tried, for behavior closely associated to the mental infirmity, i.e., as a result of the Pa. Supreme Courts Policy that they have to file notice within a certain amount of time to exercise this defense, are Punished, i.e., sentenced (for being found guilty).

6. Defendant Supreme Court of Pennsylvania was at all times relevant the State entity responsible for overseeing the administration of the Courts of Pennsylvania (expressly Centre County) and also the creating of Pennsylvania's Rules of Court; most notably Rule 568 of the Pa. Rules of Criminal Procedure.

7. Defendant Centre County's Courthouse ("CCC") was at all times rele-vant the municiple entity responsible for the administrative and management functions within its Court, i.e., the selecting of jurors and the creating of the qualifications that govern the way in which those jurors are selected for jury duty & supervising its judges.

8. Defendant District Attorney's Office of Centre County was at all times relevant the municiplity responsible for the administrative and management function within its office;

9. Defendants Stacy Parks-Miller is the District Attorney of Centre County; both Defendants Lindsey Catherine Foster and Daniel McKenrick are Assistant District Attorneys in Centre County.

10. Defendant Centre County's Defender Asso. was the municiplity charged with the administrative and management functions within its office; Defendant Crowley is the "Chief" Defender, while Defend-ant Casey McClain is an subordinate of Defendant David Crowley.

11. Defendant Pa. Department of Corrections was at all times relevant the State entity charged with detaining Plaintiff; Defendants Ferguson, LT. William Foster, Capt. Glenn Irwin, Thomas Suchta, Robert Hewitt, Thomas Gerald Lykens, David Patrick Link, Michael Worstell, Michael Lefebvre, Bernard Karabinos, Robert Williamson, Stephen Proudfit, Amy **BECKER**, Joshua Glessner, **were** at all

3

employed by Defendant Pa. Department of Corrections ("DOC") and were at all times acting on behalf of Defendant DOC.

12. Defendant Pa. State Police ("PSP") was at all times relevant the State entity charged with the administrative and management functions within its Precincts Statewide ; Defendants Brian Wakefield and Thomas U. Stock were at all times relevant State troopers acting on behalf of Defendant PSP.

13. Defendant Harrisburg Regional Laboratory ("HRL") was at all times relevant the PERSONS responsible for the administrative and management functions within its Laboratory ; Defendants Gabriel Llinas and Jeffrey A. Wagner were at all times relevant Serologist acting on behalf of Defendant HRL.

14. Defendant SCI-Benner Township's Security Department ("SBT") was at all times relevant the department within Benner Township's (Prison) responsible for the investigation of situations that may Pose a threat to the Stability of Benner Township.

15. Defendant SCI-Rockview's Security Department ("SRT") was at all times relevant the department within Rockview's (Prison) responsible for the investigation of situations within it's Prison which may Pose a threat to the Stability of Rockview.

16. Each of these Defendants are being sued individually and in his or her official Capacity for injunctive relief only and in his or her Private/Personal Capacity at all times mentioned in this Complaint while purporting to be acting under State law.

## FACTS

17. Defendant SCP is responsible for the administration and management of all Common Pleas (courts) within Pennsylvania. With this responsibility comes the duty of creating/Promulgating the Policies and Procedures carried out within those various courts; such as Rule 568 (A)(1) of the Pennsylvania Rules of Criminal Procedure;

18. Rule 568(A)(1) of the PA. R. Crim. P reads in Part:

"(A) Notice by Defendant.
"(1) Notice of Defense of Insanity or Mental Infirmity. A defendant who intends to offer at trial the defense of insanity or mental infirmity shall file with the Clerk of Courts not later than the time required for filing an omnibus pretrial motion Provided in Rule 579 a notice of the intention to offer the defense of insanity or mental infirmity, and shall

4

serve a copy of the notice and a certificate of service on the attorneys for the Commonwealth." Rule 568(A)(1) of the PA. Rules of Criminal Procedure.

19. Rule 579 of the PA. Rules of Criminal Procedure states: "(A)Except as otherwise provided in these rules, the omnibus Pretrial motion for relief shall be filed and served within 30 days after arraignment, unless opportunity therefor did not exist, or the defendant or defense attorney, or the attorney for the Commonwealth, was not aware of the grounds for the motion, or unless the time for filing has been extended by the court for cause shown." Rule 579 (A) of the PA. Rules of Criminal Procedure.

20. 18 Pa. CSA 1315 states: "General rules "the mental soundness of an actor engaged in conduct charged to constitute an offense shall only be a defense to the charged offense when the actor proves by a preponderance of evidence that the actor was legally insane at the time of the Commission of offense .."; further,

21. The definition of insanity, i.e., "legally insane" states: "(b) Definition: "for purposes of this section, the phrase "legally insane" means that "at the time of the commission of the offense, the actor was laboring under such a defect of reason, from a disease of the mind, as not to know the nature and quality of the act he was doing, or the actor did not know the quality of the act, that he did not know that what he was doing was wrong.""

22. Defendant SCP's language (e.g. Places a 30 days limit on the time in which a defendant being prosecuted within any of the PA. courts which Defendant SCP oversees), as set forth in PA. R. Criminal.P., 568(A)(1), expressly places a timeframe upon when a person can invoke "insanity" defenses; which caused Plaintiff Talley to be discriminated against for his SMI.

23. Over the course of a near two year period of time, Plaintiff was tried in the Centre County's Court of Common Pleas, in Bellefonte, PA. At the time in which Plaintiff had partaken in the acts for which he would be prosecuted, Plaintiff's mental state fell within the definition of "legally insane".

24. Defendant DOC trains all of it's employees on it's 13.8.1 policy. The 13.8.1 policy, of which the Defendants acting on behalf of Defendant DOC

5

are trained, in the Policies and Procedures that make up the 13.8.1. Defendant DOC's 13.8.1 Policy is titled: "Access to Mental Health Care".

25. Defendant DOC's 13.8.1., "Glossary of Terms", defines "Serious Mental Illness" ("SMI") as: "a substantial disorder of thought or mood that significantly impairs judgment, behavior, [or] capacity to recognize reality or cope with the ordinary demands of life."

26. The four cases for which Plaintiff was criminally prosecuted for were two counts of Agg. Harassment by a Prisoner and two counts of Arson, arising from 3/5/2014 and 3/3/2014; <u>the arsons were both suicide attempts</u>. The harassments were tried on 5/6/2015 & the arsons were tried on 9/8/2015.

27. During their interaction with Defendants Stock or Wakefield; prior to Plaintiff being criminally tried, or the time leading up to his subsequent trials within Defendant CCC; did any of the Defendants named within this Complaint, when (by their employment with/through Defendant DOC) they were acting on behalf of Defendant DOC (Defendants Ferguson, Foster, Irwin, Suchta, Hewitt, Lykens, Link, Worstell, Lefebvre, Karabinos, Williamson, Proudfit, ~~BECKER~~(Glessner), make Defendants Stock or Wakefield aware that some of Plaintiff's behavior(s) were related to his condition, i.e. "SMI" (e.g. setting fires in an attempt at self harm, ect.)

28. The alleged incident from 3/3/2014, which would lead to Plaintiff being criminally prosecuted (½ of the cases tried-) on 9/8/2015, was an incident in which Plaintiff attempted suicide by locking himself into his cell, by himself, and setting fire to his mattress.

29. The incident on 3/5/2014, of which Plaintiff was prosecuted inside of Defendant CCC on 9/8/2015, also, was an incident in which Plaintiff expressly stated on camera that his intent was to kill himself;

30. The incident on 6/5/2014, of which Plaintiff would be prosecuted inside of Defendant CCC on 5/6/2015, occurred at a time in which Plaintiff was being held in a Psychiatric Observation Cell ("POC") at SCI-Benner, already involuntarily committed to the Mental Health Unit ("MHU") of SCI-Rockview;

31. Defendant DOC's 13.8.1., "Glossary of Terms" defines a "Psychiatric

Observation Cell (POC)" as : "a cell located in the infirmary area of the facility that is used to hold inmates who are mentally decompensating to the point where they are considered a danger to themselves, other inmates, and/or Property. These cells provide a means of retaining the inmate, if necessary, and allow for constant supervision of the inmate to be maintained in order to treat the inmate."

32. The incident from 6/18/2014; which would lead to Plaintiff being criminally prosecuted (on 5/6/2014); occurred at a time in which Plaintiff was being housed in the Diversionary Treatment Unit ("DTU") at SCI-Benner Township;

33. The DTU is a specialized treatment unit with# some of Defendant DOC's State Correctional Institutions. Defendant DOC's 13.8.1, Section 14(A) states:

"A. General
   The Department strives to avoid prolonged placement of inmates with# serious mental illness (SMI) and/or Intellectual Disability (ID) in Restricted Housing Units (RHU). However, due to safety and/or security concerns, an inmate with a SMI or ID may need to be placed in a secure housing where he/she will continue to receive mental health commensurate with his/her treatment needs. Inmates being considered for placement in the DTU will not meet commitment criteria according to the Pennsylvania Mental Health Procedures Act."

34. Defendant Ferguson, W. Foster,#Irwin were employees hired by the DOC (Defendant) who~~se~~ involvement was ~~predicated on their contacting of Defendant PSP~~; resulting in ~~the subsequent criminal charges and prosecuting~~ of Plaintiff by Defendants Stock, Wakefield, Parks-Miller, McKenrick, and L.C. Foster.

35. Defendants Ferguson, W. Foster, and Irwin; at obviously different times; were the DOC Defendants whom initiated the investigations with Defendant PSP that would find Plaintiff being criminally charged for the four incidents referenced (3/3/2014; 3/5/2014; 6/5/2014; 6/18/2014). These Defendants (Ferguson, W. Foster, and Irwin) also# well as Defendants Stock, Wakefield, McKenrick, L.C. Foster and Parks-Miller, through ongoing and continuing investigations, would (1) be confronted with irrefutable evidence that statements initially given to them by DOC (Defendant) employees claiming Plaintiff had committed a criminal act against them had been falsified, and (2) while all in possession of this irrefutable evidence, steadfastly proceed with the

7

malicious Prosecuting of Plaintiff.

36. Defendants DOC have deliberately abdicated it's duties to insure that the Prisoners being detained within it's Prisons (not only in SCI-Benner) are Provided with meaningful care and adequate services to mitigate the acerbation of these symptoms, as well as sufficiently treat them. Defendant DOC has too grossly failed in it's duty to equipt its employees with the knowledge to identify the behaviors closely attributed to serious mental illness;

37. The abdication of this duty (as outlined in paragraph 36) in conjunction with the intentional and deliberate willful blindness Defendant DOC has shown to the adverse treatment of Prisoners suffering from SMI within its Prisons at the hands of it's Personnel, inables the pattern to develope and Persist.

38. Defendants District Attorney's Office of Centre County ("DACC") in conjunction with Defendant DOC (by and through Defendants SOI and SRT) as well as Defendant PSP have, With the deliberate and malicious intention of Propagating a White Supremacist Philosophy/ideology, worked in concert to Prosecute Plaintiff's Tallerus, M.Ps and Pa. Americans with Disabilities ("PAD") being detained within Defendant DOC (i.e., Defendants SOI and SRT) in a ratio grossly disproportionate to that of their caucasian counterparts, for the same or like allegations.

39. During the investigation stages of Plaintiff's Aaa. Harassment by a Prisoner cases, Defendants Stock and Wakefield (both being the State Police responsible for investigating the allegations made by Defendants Suchta and Hewitt) both forwarded the articles of clothing alleged to have been tainted to Defendant HRL.

40. Defendant Jeffreys A. Wagner was the Personal within Defendant HRL who Performed the Presumptive Chemical test on Defendant Suchta's clothing from 6/18/2014. Defendant Wagner forwarded his Serology report and the clothing tested back to Defendant Wakefield on 11/25/2014;

41. Defendant Llinas Performed a Serology report on Defendant Hewitts Uniform on 11/30/2015. In his Serology report Defendant Llinas alleged, as had Defendant Wagner, that Defendant Hewitts Shirt had tested Positive for urine.

42. On 11/30/2015, Defendant Hewitt alleged, contrary to both the misconduct reports he'd Written regarding 6/18/2014, that he'd "smelled urine" on 6/18/2014. Defendants Hewitts falsified statement was made in Open court; (i.e., Perjury)

43. The falsified Presumptive Chemical tests ("serology") reports from Defendants Wagner & Llinas, by way of testimonies given by Defendants Wakefield & Stock (during Plaintiff's 11/30/2015 Preliminary hearing, before Defendant Jonathan D. Grine), were used to establish the two aggrieved Harassments against Plaintiff. * a Prima facie showing of

44. Defendant Llinas would testify At Plaintiff's 5/6/2015 trial for both of the aggrievate harassments Plaintiff, as a witness (expert) for the Commonwealth. Contrary to the serology reports that had been submitted by himself and Defendant Wagner, Defendant Llinas would testify that a Presumptive Chemical test for "components" of urine on each article of clothing was positive. Llinas acknowledged on cross-examination that that this testing was "Not Conclusive", and that the "Components" are found in substances other than urine;

45. Plaintiff would be found "Guilty" of both counts of agg. Harassment by a Prisoner, with the two falsified serology reports submitted by Defendants Wagner and Llinas (to Defendants Stock and Wakefield) used as a means of establishing that Plaintiff had thrown urine on Defendant Suchta (on 6/6/2014) and Hewitt (on 6/18/2014).

46. Defendant L.C. Foster was the Prosecuting Attorney for the Commonwealth and, along with Defendants Stock & Wakefield (as well as Defendant McClain), were Present in the courtroom when Defendant Llinas, contrary to the two serology reports, testified that Presumptive testing was inconclusive (for showing whether or not the liquid was urine). Either Defendants Wakefield, Stock, or McClain objected to this; All, in concert, feigning ignorance to the falsified serology reports.

47. Throughout the ongoing investigations regarding the four cases in question, both Defendants Stock and Wakefield coached the witnesses for the Commonwealth, as well as Defendant L.C. Foster, on what and how to say what needed to be said to obtain convictions against Plaintiff.

48. Defendant Stock knowingly falsified affidavits of Probable Cause against Plaintiff; by wording them in such a manner as to unjustifiably obtain arrest warrants to seize Plaintiff's Person. (Most notably the affidavit of Probable Cause in connection with Defendant Hewitt).

49. Through both Motion (for Habeas Corpus) and in open Court on 3/10/2015, Plaintiff made both Defendants Grine, Williamson, Stock, L.C. Foster, and McClain, aware that Defendant Worstell had submitted falsified testimony to the Court on 5/7/2014, and those same falsified statements were being used to Prosecute Plaintiff;

50. Defendant L.C. Foster conceded that she was indeed aware of the

9

falsified statements, yet wished to proceed with prosecuting Plaintiff; a face neither Defendants stock, Williamson, nor McClain objected to.

51. Throughout her prosecuting of Plaintiff, as the attorney for the Commonwealth, with substantial proof of Plaintiff's serious mental illness; overwhelming validating Plaintiff's insanity and mental infirmity at the time(s) all of the alleged crimes had been committed; motioned the court to preclude Plaintiff from entering this evidence;

52. Defendant L.C. Foster knowingly precluded, or petitioned the court to preclude, Plaintiff from entering evidence of his insanity and/or mental infirmity. When such motion had been brought before Defendant Ruest, she granted Defendant L.C. Foster's motions; a ruling which is/was predicated on Defendant SCP's promulgation of Pa. R. Crim. P., 568.

53. Due (in large part) to Defendant SCP promulgation of Pa. R. Crim. P., 568; even when Plaintiff was his own lawyer; Defendants L.C. Foster, stock, and Wakefield were able to knowingly, and deliberately, ~~~~ prosecute Plaintiff, and several other-countless numbers.- Plaintiff M.P.' and Pa. Americans with Disabilities ("ADA") within Defendants SBT & SRT.

54. On July 2nd, 2015, Defendant William Foster testified at Plaintiff's sentencing before Defendant Ruest (Defendants L.C. Foster, McClain, Suchta, and Hewitt were also present). While under oath Defendant Foster lied stating that he'd never investigated an abuse allegations of staff violence against Plaintiff's; to conceal the violence being committed against Plaintiff;

55. Defendants Hewitt, Suchta, & William Foster all testified at Plaintiff's July 2nd, 2015 sentencing; none of these Defendants, all possessing knowledge that Plaintiff suffered from SMI, mentioned that Plaintiff's SMI may've been a factor in the alleged conduct. Defendants Hewitt, Suchta, and W. Foster allowed for Plaintiff to be discriminate on account of his SMI.

56. None of the Defendants named herein, working (i.e., testifying) as witnesses for the Commonwealth, on behalf of Defendant BDC, made the jurors at either of Plaintiff's trials aware that Plaintiff's conduct/behavior may've been a result of his SMI.

57. On 7/2/2015, before Defendant Ruest, Plaintiff was sentenced to 4½ to 9 yrs; On 12/15/2015, before Defendant Grine, Plaintiff was sentenced to 13 to 26 years; for a grand total of 17½ to 35 years of incarceration for conduct closely associated with Plaintiff's SMI, of which, due to Defendant SCP's promulgation of Rule 568, Plaintiff had been precluded of making either jury in ANY of the cases he was sentenced to; aware that at the time of the alleged crimes, he was legally insane.

58. Defendant SCP's promulgation of Pa. R. Crim. P., 568 resulted in Plaintiff

being precluded from informing the jury's, in either of his case's that Plaintiff would fall under the "legally" insane (state of mind) at the times in which he committed the "alleged" crimes he was being tried for, in conjunction with all of the herein named Defendants failure to also make this known to Plaintiff Juries, as well, resulted in Plaintiff being discriminated against on account of his SMI; which would also result in Plaintiff being sentenced, collectively, to 17½ to 35 years in prison.

## CENTRE COUNTY COURTHOUSE

59. During the timeframe in which Plaintiff was being Prosecuted by Defendant L.C. Foster, in exercising his 7th Amendment right to a jury, Plaintiff opted to have jury trials. Plaintiff picked a jury on 2/3/2015; 4/6/2015; and 8/3/2015. Every venire Plaintiff picked his jury from (30 original Jurors) - all the Jurors, on every venire was White.

60. Defendant CCC has failed to include within it's requirements for Jurors to be selected for Jury duty language which considers, i.e., equally protects, Plaintiffs Tallies and M.P. interest ("liberty") [freedom] and their 6th Amendment rights to a "Jury of your Peers"; i.e., fair trial

61. Centre County, Pa; home of Penn State University; is a diversified community with an assortment of Persons from every race, color, creed, or religious background imagineable. Since the Sixth Amendment guarentees that the Petite Jury will be selected from a Pool of names representing a cross selection of the community. Defendant CCC, in it's Promulgation of Jury selection requirements, has deliberately & systematically employed language that excludes minors from participating in Juries;

62. This deliberate Promulgation of requirements for Jury selection(s) that systematically excludes Plaintiff M.P. from Jury trials tried within Defendant CCC; exposed Plaintiff Tallies (an African-American), a member of a "suspect class" to three (3) trial Juries that not only under represented him, as a minor and/or African-American, but completely excluded Plaintiff M.P.

63. Defendant CCC; and all of it's officials (i.e., Prothonotary, Commissioner, Judges, Personnel, ect.); are all aware of the under presentation (or, there of) of minorities and the dangers that such an under representation of Plaintiff M.P. Poses to the life and liberty of Plaintiffs Tallies and M.P.;

64. On 2/3/2015 and 4/6/2015, before Defendant Kistler; who himself called every Juror; Plaintiff was subjected to two venires of all whites, which Defendant Kistler feigned ignorance to the serious risk of danger Plaintiff's life and liberty was placed in; as an

11

African-American being tried before a Jury of all whites;

65. Defendant Kistler himself has been scrutinized for e-mails he'd sent to an acquaintance, of a racial nature; expressly discriminating against African-Americans, i.e., Plaintiffs M.P. & Talley's "suspect class";

66. On 8/3/2015, Plaintiff Talley expressly spoke of the fact that him being made to select another Jury, his 3rd, from an venire of all whites, was a violation to his rights to a fair trial and to a Jury of his Peers to Defendant Ruest; who did nothing to Protect Plaintiff from this Constitutional violation or to insure Plaintiff Talley received equal Protection of law;

67. In the courtroom, in open court, after Plaintiff's Jury venire had been selected (on 8/3/2015); again, 30 whites; Plaintiff requested a change venire; an oral motion Defendant Grine dismissed without having attorney for the Commonwealth, L.C. Foster, Present arguments

68. Defendant CCC, from top to bottom, during all times in which, Plaintiff was being criminally Prosecuted within Defendant CCC, had an employment roster of all whites; a continuing wrong/violation (doctrine) that has made of it's municipality a machine made for the speedy deliberate callous Prosecutions of minorities;

69. During several times throughout the criminal Proceedings in which Plaintiff Talley was being Prosecuted, he was his own attorney; and at all times in which he was his own attorney, Defendant McClain was his standby counsel.

70. Defendants Ruest, Kistler, Grine, and Lunsford at various times; throughout the criminal (and "civil", for Defendant Ruest) entered orders; Judgements that were expressly either to Preclude Plaintiff Talley from Prosecuting his cases, while furthering the A.D.A (Defendant) L.C. Foster's Prosecuting;

71. On September 18th, 2014, before Defendant Lunsford, Plaintiff, as well as Defendant McClain, made clear that Plaintiff Talley wanted to proceed Pro se, i.e. Self-representation; Defendant Lunsford denied Plaintiff Talley his right to Self-representation; enter McClain as lead counsel (at this time, Defendant Lunsford had pending "tax evasion" charges).

72. On December 4th, 2014, before Defendant Lunsford; a pretrial conference that would find Defendant McClain Presenting to the court what he referred to as a "make-shift" Habeas Corpus; Defendant Lunsford, in on court asked Defendant L.C. Foster had she "consolidated" Plaintiff's cases, which she hadn't, then consolidated his cases.

73. Twice, while his own counsel, Plaintiff Talley had been obstructed

12

,by DOC official, from appearing for court (on 4/28/2015 and 6/18/2015). Defendant Ruest would deny eleven (11) of Plaintiffs Motions on 4/29/2015. When Plaintiff Talles addressed this in Open Court, Defendant Ruest merely stated "the DOC said you refused".

74. In Open Court on 6/1/2015, Plaintiff Talles made Defendant Grine aware that he hadn't seen the footage (i.e. all of it) that could come to be used against him at trial, which Defendant McClain possessed. Defendant Grine failed to schedule an opportunity for an "in camera" viewing;

75. During his Pretrial "motion in limine" hearings on September 3rd, 2015, Plaintiff Talles again told Defendant Kistler that he hadn't been afforded the opportunity to review the video footage (in it's entirety) in connect° with his Arons; Defendant Kistler entered an order stating any footage Plaintiff didn't see could be objected to at trial;

76. Though it was evident that Plaintiff was his own counsel on 9/3/2015, Defendant Kistler entered orders as if Defendant McClain was head counsel. Further, when Plaintiff told Defendant Kistler about the video footage, and not seeing it, his response was: "That's what happens when your your own Counsel ..."

77. On 9/8/2015, before Plaintiff Talles's trial began, Defendant Grine made Defendant McClain lead Counsel, stating: "we're not playing these games ..."

78. At Plaintiff's trial, after Defendant Grine made Defendant McClain lead Counsel against Plaintiff Talles's pleas and in violation of Plaintiff 6th Amendment right to "self-representation", Defendant L.C. Foster expressly requested for Defendant Grine to preclude me from speaking which he did; in Defendant L.C. Foster's opening statement she stated: "and your going to see video footage of Plaintiff recording to these crimes..."

79. Defendants Grine, Ruest, Lunsford, Kistler, Stacy Parks-Miller, L.C. Foster, and McClain all, Collectively, conspired to violate Plaintiff's Constitutional (federal) rights and use the court system as a medium to involuntarily "enslave" Plaintiff.

80. Being Convicted and sentenced resulted in Plaintiff having to pay Court Costs and fines; on 12/15/2015, Defendant Grine even entered an order for Plaintiff Talles to pay fees for charges for which he hadn't even been prosecuted for. The end goal of all Defendants (named in Paragraph 79) was to both enslave Plaintiff and subject him to having to pay fines - as a direct result of trumped up charges - for crimes in which he was deliberately and systematically denied due process to defend.

81. Defendant CCC has failed to establish sanctions to deter their Judges

conducting themselves in an ethical manner or from violating the State and federal Constitutional rights of defendants tried in the Court, in being deliberately indifferent to these practices, have enabled this Pattern to develop and Persist, resulting in Plaintiff's Talleys, M.P. and P.B. being subjected to involuntarius Servitude and slavery.

82. Another common Practice of Defendants Ruest, Grine, Kistler and Lunsford Was the total denial of EVERY court document filed by Plaintiff's Talleys and M.P. to intentionally further the Prosecution (malicious as it was) of Defendants L.C. Foster, Parks-Miller and DACC

83. On 3/6/2015, Defendant Williamson too, denied Plaintiff the right to enter evidence of his legal insanity and also denied Plaintiff's Habeas Corpus without even affording him the opprotunity to be heard.

## DISTRICT ATTORNEY'S OFFICE OF CENTRE COUNTY
## AND CENTRE COUNTY'S DEFENDER ASSOCIATION

84. Defendants McClain and L.C. Foster both worked together to insure a fast and speedy Prosecution of Plaintiff, with the outcome of Plaintiff being convicted of crimes in which the elements didn't even exist, so they couldn't Possibly have been proven;

85. Throughout her Prosecution of Plaintiff four (4) cases, Defendant L.C. Foster Knowing used Perjurious statements and evidence turned over to her by Defendants Stock and Wakefield; which had been obtained by Defendants Wakefield and Stock during the investigation stages of Plaintiff's Cases;

86. Defendant Daniel McKenrick was the attorney for the Commonwealth who did the investigation of Plaintiff's Arson cases and Preliminary hearing. Though there had initially been testimony/statements made to Trooper Stock that Plaintiff attacked Defendant Worstell on 3/3/2014, the camera footage Defendant McKenrick was given during the investigation stage clearly showed that it was Defendant Worstell who initiated the contact between him and Plaintiff; Defendant McKenrick still Prosecuted

87. Defendants McKenrick and L.C. Foster were both given video footage and documentation that expressly shows and confirms that at the time of the two Arsons (3/3 & 3/5/2014), Plaintiff was attempting suicide; a fact neither brought to the attention of Defendant/Judges in Defendant (S.) or Plaintiff's Jury;

88. Defendant DACC & Defendant Parks-Miller, have failed to, as administrators, establish training, supervision and discipline policies which would have (a) prevented or discouraged Defendants Stock and Wakefield from Producing Perjurious "eyewitnesses" and/or testimonies (or statements), and (b) alerted assistant District attorneys to the falsity

14

of such information and prevented its introduction as evidence.

89. Pennsylvania Rules of Professional Conduct 3.8 "Special Responsibility of Prosecutor" makes it clear that a Prosecutor should refrain from Prosecuting a charge not supported by probable cause; yet, Defendants' DACC and Parks-Miller have failed to implement sanctions to deter it's assistant district attorney from failing to uphold these principals.

90. Defendant DACC & Parks-Miller have allowed for the pattern of perjured statements and evidence, submitted by Defendants DOC, SRT, and SRT, used by it's assistant district attorney and Defendants Stock and Wakefield to be used against Plaintiffs' Talley, M.P. and PAD, within the two prisons inside of its County, SCI-Benner Township & Rockview.

91. Defendants DACC & Parks-Miller have failed to use their authority (as County officials) within [the] (Defendant) District Attorney's Office of Centre County, to equally Protect Plaintiff's Talley, M.P. and PAD from violence and physical abuse of Defendant DOC's (employees) as they do with Defendant's DOC SBT, and SRT's Personnel's

92. Defendants DACC & Parks-Miller have continuously, and knowingly used it's office to shield Defendant DOC, SRT, and SBT's Personnel from being held responsible for it's criminal acts against Plaintiffs Talley, M.P. and PAD, even in the face of irrefutable evidence failing to equally Protect Plaintiffs Talley, M.P., and PAD, in the way they do Defendants DOC's Personnel. * Though Plaintiff Talley, himself, had filed numerous private complaints about his being abuse by DOC Personnel at SCI-Benner.

93. Defendant DACC, as well as PCRA, have failed to; in violation of the continuing wrong [violation doctrine, to hire a single minority within the offices, resulting in a deliberate, cruel, and sadistic; all being sustematically calculated; Prosecution of Plaintiffs Talley and M.P.

94. Defendants CCC, Kistler, Grine, Lunsford, Ruest, DOC, SRT, and SBT have knowingly conspired to use the Judicial system as a medium to subject Plaintiffs Talley and M.P., and PAD, within both SCI-Benner Township and Rockview to being deliberately discriminated against on account of their race and serious mental illnesses.

95. Defendants DACC have deliberately conspired with Defendants DOC, SBT & SRT; while Defendants Crowley, McLain have feaned ignorance and contributed to it by failing to defend (Plaintiffs Talley, M.P., and PAD); to create an entire system with Defendants Stock and Wakefield too contributing, by falsifying and choreographing Police reports) Predicated on the Prosecuting on Plaintiffs' Talley, M.P., and PAD.

15

96. The Practice of targeting Plaintiffs Talley, M.P., and PHO, and subjecting them to being criminally prosecuted, in disproportionate ratios (in comparison to their white counterparts) within both SCI-Rockview (and as of 2013), SCI-Benner Township has been a longstanding Practice by Defendants DOC, SRT, CCC, DACC, CCDA, Crowley and McClain's (Defendants) feigned ignorance to this Practice has allowed it to ~~develope~~ and persist.

97. During the early Pretrial stages of Plaintiffs "Agg. Harassment by a Person" (criminal) Proceedings, Plaintiff had expressly asked for Defendant McClain to obtain Plaintiff medical (i.e. mental records) from SCI-Benner, even signed a release of information for it, Defendant McClain denied this request, telling Plaintiff "It costed too much".

98. Defendants Crowley and CCDA have failed to implement training that enables its Defenders to identify occurrences (through the investigating stages of a criminal case) that give rise to either "mental infirmity" or "legal insanity" resulting in Plaintiffs Talley, M.P., and PHO, within not only SCI-Benner & Rockview, but County Wide & their's own being convicted of current of.

99. Defendants Crowley and CCDA's failure to set aside a budget for/or to implement training, consistant with that which enables them to identify the symptoms or occurrences that would validate the Defense of "Mental infirmity" or "insanity" (legal) does Place a Risk (serious) of being discriminated against on Plaintiffs Talley, M.P., and PHO because, the greater majority of Persons being charged, tried, and prosecuted with in SCI-Benner or Rockview are minorities with a SMI.

100. Defendants Crowley and CCDA have failed to supervise, or to create a Policy, Procedure, or system that monitors the sanctions that either encourage or deter; the ways in which its defenders interact, communicate, or defend its clients, detering unprofessional representation.

101. Defendants Crowley and CCDA have too failed to employ a system, or sanctions that equips its defenders with the ability to identify and file timely defense motions or failing to even entertain the filing of such motions when appropriate. ~~the point of the Judge dismisses a request~~ ~~motion due to counsel's error, when any action would have been warrented.~~

## PA. DEPARTMENT OF CORRECTIONS

102. None of the Defendants named herein as acting of behalf of Defendant DOC (Ferguson, William Foster, Irwin, Suchta, Hewitt, Luken, Link, Worstell, Lefebvre, Karabincs, Williamson, Proudfit,

Becker, or Glessner made either trooper, Prosecutor, counsel, Judge or Jury aware that Plaintiff was (1) Diagnosed by the DOC as suffering from serious mental illness, or (2) that his acting out may be attributed to his SMI.

## HARRISBURG REGIONAL LABORATORY

103. Defendant HRL, through its willful blindness of its employees, Defendants Llinas and Wagner in Particular, falsification of serelogic reports, in that Presumptive chemical testing can show nothing but "components", which are also found in other substances, making the testing "inconclusive"; has enabled this Pattern of falsified documents to not only Place the life & Liberty of Plaintiffs Talley, M.P, and PAD, but Persons (citizens) state wides life & liberty in Jeopardy.

104. Defendants Wagner & Llinae' falsified serelogic reports, as the "scientifically" valid evidence used to Prove that Plaintiff had committed "Agg. Harassment by a Prisoner", i.e., threw urine on Defendants Hewitt & Suchta, resulted in a 4½ to 9 years sentence, when both knew that Presumptive chemical testing could Prove no such thing.

## PENNSYLVANIA STATE POLICE

105. Defendants Stock & Wakefield, acting on behalf of Defendant P&P, failed to bring to the attention of any of the evidence (mountains of it) that made the Juries in any of Plaintiffs trials aware that Plaintiff suffered from serious mental illness, that was evident during all times relevant to the allegations they investigated resulting in Plaintiff first, being discriminated against on account of his serious mental illness, and subsequently sentenced to 17½ to 35 yrs (collectively) for his SMI.

106. Defendant Stocks intentionally fabricated affidavits of Probable cause to obtain arrest warrants against Plaintiff and instructed DOC Defendants as to what to say during Court appearances, resulted in Plaintiff, a Prisoner suffering from serious mental illness, being unjustly sentenced to involuntary slavery & servitude.

107. Defendant Stock also knowingly, and Deliberately, submitted responses to investigations of Plaintiffs Private Complaint (criminal); Conspiring to Conceal Defendant Worstells attack of Plaintiff Talley on 3/9/2014; while he and Defendant Foster Prosecuted Plaintiff with Defendant Worstell Perjured Preliminary hearing testimony.

17

108. All of the Defendants named herein conspired to use the Centre County Judicial system as a means of unjustifiably punishing Plaintiff for acts resulting from his serious mental illness; and

109. As a strategic means of extorting Plaintiff for monetary gain, as all Defendants were either receiving money from the County (centre) or State (of Pennsylvania);

110. All of the Defendants named herein have also systematically, for years now, ongoing and longstanding, used the Centre County Judicial system as a means of forcing Plaintiffs Talley, M.P. and PAD to being extorted into paying fees for court costs and fines, on fabricated and trumped up charges.

111. Defendants Parks, Miller and DACC have failed to impliment a system that deters it's assistant district attorneys & detectives ~~incarcerable~~ from filing and prosecuting Plaintiffs Talley, M.P. and PAD on trumped up charges, often absent of the criminal elements needed to prove the charge ;(as well as ongoing training);

112. Defendant Crowley and CCDA have failed to create a program or impliment training that insures their assistant defenders are competent in the identifying of the criminal elements that make out a criminal charge ; preparing them to better, or best, defend client.

## IV. LEGAL CLAIMS

113. Plaintiff realleges and incorporates by reference paragraphs 1-112.

## AMERICANS WITH DISABILITIES ACT ("ADA")

114. Defendant SCP's promulgation of ~~Rule 565~~ **§563(A)(1)** of the Pennsylvania Rules of Criminal Procedure, when used by Defendant L.C. Foster during the prosecuting of Plaintiff Talley's prosecution (during all four (4) of the criminal cases she prosecuted on behalf of the Commonwealth of Pennsylvania), was employed as a means of denying Plaintiff Talley the benefit (i.e., defense) of a Public entities services, though Plaintiff Talley's serious mental illness was made evident to Defendant L.C. Foster, resulting in Plaintiff Talley, a qualified individual with a disability (i.e., mental) to be discriminated against during pretrial, trial, and Post trial proceedings held within Defendant COC on account of his disability; violated the ADA.

115. Defendants Ferguson, W. Foster, Irwin, Suckta, Hewitt, Lukens, Link, Worstell, Lefebvre, Karabinos, Proudfit, ▆▆▆▆▆▆ Glessner, and Becker, all possessing extensive knowledge regarding

18

Plaintiff Talley's smile.s..his setting of fires as a means of self-harm, self-insurious behavior, ect.), all acting on behalf of a public entity, Defendant DOC, failed to present the knowledge which they all possessed regarding Plaintiff's smits either Defendants Stock, Wakefield, L.C. Foster, Kuest, Grine, or at any of Plaintiff Talley's trials (before his all white Juries), their failure to do so resulting, ultimately, in Plaintiff being discriminated against on account of his mental disabilities, i.e. sentenced to a collective 17½ to 35 yrs. additional prison time, violated the ADA.

116. Defendants Stock, Wakefield, Mckenrick, L.C. Foster, all officials employed by public entities, failure to insure that the mounds upon mounds (of documentations and video footage) of evidence they had been presented with during their investigating stages of Plaintiff Talley's criminal proceedings (for all four (4) cases in question); prior to the actual filing of charges and ongoing inquiries; of Plaintiff's legal "insanity" or "mental infirmity" at the time of the alleged commission of the crimes he was charged for, was presented to either of the Juries during ANY of Plaintiff's trials-that would've alerted them to the fact that some of the behaviors were related to his condition, not intentional violations of the law, preventing the possibility of Plaintiff Talley being discriminated against on account of his sml, failing to make this reasonable accommodation, violated the ADA.

117. Defendant DOC's failure to create Policy that expressly obligated its employee's or contracted help to make law enforcement aware of the sml or mental infirmity of a prisoner (such as Plaintiff Talley and/or PAD) detained by them subjected to criminal prosecution (or or possible criminal prosecution) violates the ADA.

118. Defendants CCDA, and Crawley's failure to create Policy obligating it's "Defenders" to timely present to the Courts when a client they represent, as the case with Plaintiff Talley and PAD, may've fallen under the "legal insanity" or "mental infirmity", or Punishing the express denial by one of it's "Defender" to present such defenses upon the expressly clear request by one of it's clients, violates the ADA by enabling one of it's clients, as with Plaintiff Talley, to be discriminated against on account of their disability. (Plaintiff Talley is speaking on, specifically, Defendant McClain absolutely refused to timely file either a "legally insane" i.e.. legal insanity or mental infirmity, even though Plaintiff Talley had requested it -on numerous occasions!)

119. The ADA claim from Paragraph "116" is stated against Defendants Stock, Wakefield, McKenrick, and L.C. Foster in their "official" capacities;

19

so, for clarification, it is brought (the ADA claim) against Defendants DACC & PSP, for this is whom they act officially on behalf of.

120. ✱ The ADA claims from paragraph 115 are actually against Defendant DOC, for this is whom all of the DOC Defendants were acting on behalf of at all times relevant.

## 14ᵗʰ AMENDMENT OF THE UNITED STATES CONSTITUTION

121. Without redundant rhetoric, i.e., repeating every word within paragraphs 114-120, all of the acts, omissions, and willful blindness by Defendants, DACC, CCDA, SCP, DOC, and PSP, which collectively resulted in a "due process" violation in which Plaintiff Talley was sentenced to a collective 17½ to 35 yrs, violates the 14ᵗʰ Amendment.

122. Defendant CCC, in it's promulgation of Jury selection requirements, deliberately placing within it's requirements language that systematically excludes the African-American, Spanish, i.e., Plaintiffs Talley & M.P. from also being represented, subjecting Plaintiffs Talley & M.P. to being tried by all white Juries, undermining their rights under the Constitution to have equal protection of the law (under "Suspect Class") violates the 14ᵗʰ Amendment.

123. Defendant CCC's deliberate and systematic exclusion of African-Americans from it's Jury, subjecting Plaintiff Talley to being tried by ALL white Juries (as well as veniras), discriminating against a "suspect class" by Defendant CCC, violates the 14ᵗʰ Amendment 'equal protection' clause.

124. Defendants DACC, SBT, SRT, and PSP deliberate and systematic prosecuting of Plaintiff Talley, M.P.'s (minorities) DAD inside of both SCI-Rockview & Benner Township, with the intention of propagationof a white supremacis ideabais, i.e., the oppression of a "suspect class" by using the Judicial system as a medium to obtain that end, in a ratio grossly disproportionate to that of their caucasian counterparts, for the same or like allegations, violates the 14ᵗʰ Amendment.

125. Defendants SBT and SRT's deliberate and systematic use of the Centre County Judicial system (Defendants DACC, CCC, PSP) as a medium for subjecting Plaintiff Talley and other minorities whom suffer from serious mental illness to being criminally prosecuted and having life and liberty placed in jeopards for acts closely associated with their serious mental illness, giving the authorities no notice that their

behaviors may be a direct result of their mental illness and not intentional violations of the law, failing to give a "suspect class" the "equal Protection" it affords it's white citizens detained in its prisons, violates the 14th Amendment.

126. All of the herein named Defendants ongoing and systematic use of the Centre County Judicial system as a means of placing the life and liberty of Plaintiff Talley and Other African-Americans in Jeopardy (through their targetting of a "suspect class") violates the 14th Amendment.

121. Defendants Wagner & Llinas intentional employment of the "creditials as experts (in the field of "serology") to fabricate serology reports against Plaintiff Talley, placing his life and liberty in Jeopardy, Knowingly, violates the 14th Amendment.

## 14th AMENDMENT OF THE UNITED STATES CONSTITUTION

128. When Defendant Stock intentional fabricated the affidavits of Probable Cause regarding the incident between Defendant Hewitt to read in such a manner as to "create" a Probable cause from a situation in which the evidence (i.e., interviews with Defendant Hewitt) obtained in itself didn't justify the seizing of Plaintiffs Person, he violated the 14th Amendment, under the "Due Process Clause", and/or "equal Protection" by impeding Plaintiff Talley's "equal Protection" of the law;

129. When Defendants Ruest, Williamson, Grine, Lunsford, and Kistler used the authority as Judges within Defendant CCC to impede Plaintiff Talley from being heard at a reasonable to and in a reasonable manner, thus violated Plaintiff Talley's 14th Amendment.

## 13th AMENDMENT OF THE UNITED STATES CONSTITUTION

130. All of the herein Defendants collectively conspired to employ the Pennsylvania judicial system as a means of subjecting Plaintiff Talley to "involuntary servitude" and "slavery"; (this is how all of the herein named Defendants contributed):

131. When Defendants Worstell and Hewitt Knowingly took the stand and lied under oath;

132. Defendant L.C. Foster's Knowing use of falsified testimony (in which she knew Defendant Worstell had made while under

21

oath on 5/1/2014), she contributed;

133. When Defendant McClain knowingly sided with the Commonwealth's Attorney (L.C. Foster), to undermine Plaintiff Talley's possible defense strategies;

134. When Defendants Ruest, Lunsford, Grine, Kistler, and Williamson all systematically entered court orders throughout Plaintiffs Pre-trial stage, precluding Plaintiff Talley from being able to obtain witnesses, to see footage (later used against Plaintiff), as well as knowingly allowing Plaintiff to be prosecuted with false statements, impeding, unjustifiably, Plaintiffs right to self representation as a means of precluding Plaintiff from objecting to video footage he hadn't reviewed;

135.* Without the redundant recitation of Plaintiffs Complaint in general, he states "in general"..

## 8th AMENDMENT OF THE UNITED STATES CONSTITUTION

136. All of the herein named Defendants employment of the Pennsylvania Judicial system as a means of indecently depriving Plaintiffs Talley, M.P., and PAD of their right to not be systematically and deliberately targeted for reasons falling outside of "judicial", violated these Plaintiffs' right to be free of "cruel and unusual" punishment.

137. Defendants Lunsford, Kistler, Ruest, Grine's willful participation in a systematic program in which Plaintiff's Talley, M.P. and PAD are subjected to trumped up charges, whose elements are absent, find themselves deprived of meaningful due process, then made to pay court costs and fines, violates the 8th Amendment.

138. Defendant McClain's intentional working with Defendant L.C. Foster to sabotage Plaintiffs available defenses, in an successful effort to have Plaintiff Talley unjustifiably convicted for allegations stemming from his SAU, violates the 8th Amendment.

139. Defendant McKenrick and L.C. Foster obtaining, through evidence submitted to the by the DOC, of evidence that several of the Defendants (named herein) had committed perjury or falsified statements to authorities, yet still prosecuting Plaintiff Talley with these perjured statements, violated the 8th Amendment.

140. Defendants DACC & Parks Millers failure to establish training, supervision and discipline policies which would have (a) prevented or discouraged Defendants Stack and Wakefield from procuring perjuri-

22

aus "eyewitnesses" and/or testimonies (or statements), and (b) alerted Assistant district attorneys to the falsits of such information & prevented it's introduction as evidence, violated the 8th Amendment.

141. Defendants DACC & Parks-Miller's allowance for the pattern of perjured evidence and statements, submitted by Defendants DOC, SBT, and SRT, used by its Assistant district attorney's (specifically, L.C. Foster & McKerrick, in regards to Plaintiff Talley) and Defendants Stack & Wakefield to be used against Plaintiffs Talley, M.P., and PAD within the two (2) Prisons located inside of Centre County (SCI's Rockview & Benner Township) violates the 8th Amendment.

142. Defendants DACC & Parks-Miller have failed to use their authority (as County officials) within ~~the~~ District Attorney's Office of Centre County to equally protect Plaintiffs Talley, M.P. and PAD from the on-going and continuous violence and abuse of DOC employees within SCI's Benner Twp. & Rockview, allowing for it to develope and persist, in violation of the 8th Amendment (the claim stated herein is also being stated in the Alternative as a 14th Amendment violation).

143. Defendants DACC & Parks-Miller employment of its office as a shield, protecting DOC employees within SCI-Benner Twp. & SCI-Rockview from being held responsible for their criminal acts committed against Plaintiffs Talley, M.P., and PAD, even in the face of the irrefutable evidence submitted to them from Defendant DOC's officials, as a result of Plaintiff Talley, M.P., and PAD's filing of numerous private criminal complaints, violates the 8th Amendment (as well as the 14th Amendment).

144. Defendants DACC, CCC, CCDA, Crowley & Parks-Miller's ongoing failure to hire a single minority within the District Attorney's Office of Centre County, or ~~the~~ the Centre County Defender Association facilitating (i.e. enabling) the deliberate and systematically calculated Prosecuting of Plaintiffs Talley and M.P., violates the 8th Amendment.

145. All of the Defendants named herein have deliberately conspired to use the Pennsylvania Judicial system as a medium to systematically discriminate against Plaintiffs Talley, M.P. and PAD on account of their race and mental infirmity, violates the 8th Amendment.

146. The absolute denial by Defendant McClain to employ defenses of which Plaintiff Talley had expressly requested be employed (i.e.

23

"legal insanity") resulting in Plaintiff being sentenced to a collective of 17½ to 35 yrs (Prison time) Violates the 8th Amendment (NOTE: this Claim as stated also violates the 6th & 14th Amendment).

147. Defendant CCDA and Crowley's failure to implement training that enables it's Defenders to identify occurrences (though) during the investigating stages of a criminal case) that give rise to either "mental infirmity" or "legal insanity", resulting in Plaintiffs Talley & PAD, not only within SCI-Benner Twp. and SCI-Rockview, but (Centre) County wide, being (unduly) Prosecuted, tried, and convicted on account of their SMI violates the 8th Amendment (as well as the 6th, 5th, 14th and ADA).

148. With the majority of Persons within SCI-Benner Twp. & Rockview who are charged, tried, Prosecuted and convicted in Defendant CCCA & Defendant DKCC, Defendants CCDA & Crowley's failure to allot a budget for/or to implement, training that would equipt its Defenders with the ability to identify clients whom suffer from a serious mental illness, Possibly giving rise to Plaintiffs Talley, M.P., and PAD being able to employ the "mental infirmity" or "legal insanity" defense Violates the 8th Amend. (NOTE: This Claim, as Stated, also violates the 5th, 6th, 14th and ADA too).

149. Defendants CCDA & Crowley's failure to supervise, by creating a Policy, Procedure, or System that monitors and/or sanctions the ways in which it's Defenders interact, communicate, or defend its clients, deterring unprofessional representation, Violates the 8th Amendment (NOTE: this Claim as stated also violates the 5th, 6th, 14th and ADA).

150. Defendants CCDA & Crowley's failure to employ a system or sanctions that equipt it's defenders with the ability to identify and file timely defense Motions, or failing to Even entertain such motions when appropriate, Violates the 8th Amendment (NOTE: This Claim as Stated also violates the 5th, 6th, 14th and ADA).

## CONSPIRACY

151. All of the Defendants named herein have knowingly conspired to deliberately & systematically use the Pennsylvania Judicial system as a medium for the malicious and unjustified Prosecuting of Plaintiffs Talley, M.P., and PAD;

152. All of the Defendants named herein have collectively conspired to further a white supremacy Philosophy/ideology by employing the Pennsylvania Judicial system as an instrument to Prosecute

24

Plaintiffs Talleu, M.P. (and PAD, minorities) within SCI-Benner Twp. and Rockviews in a disportionate ratio to that of their White Counterfate.

153. Defendants Stock, Wakefield, McKenrick, L.C. Foster and Parke-Miller, in conjunction with all of the DOC Defendants (see paragraph 102) to Conceal the criminal acts being committed against Plaintiff bys the Various Employees working on behalf of Defendant DOC. (Plaintiff Talleu, M.P., and PAD are "Plaintiff").

154. Defendants Llines and Wagner have conspired with Defendants Wakefield, Stock, L.C. Foster, DACC, and Parke-Miller to maliciously Prosecute Plaintiff Talleu bys falsifying serology reports, leading to the use of these reports as evidence in criminal trials in which Plaintiff Talleu was given 4½ to 9 yrs.

## 5TH AMENDMENT OF THE UNITED STATES CONSTITUTION

155. Defendant L.C. Foster's knowing and deliberate use of Perjurious testimony and evidence used to Prosecute Plaintiff Talleu, given bys Defendant Worstell, Violates Plaintiff Talleu's due diligence clause of the 5th Amendment.

156. Defendants McKenrick, L.C. Foster, Parke-Miller, DACC, Stock & Wakefield's knowing use of choreographed and falsified statements against Plaintiff, used to deprive Plaintiff of his liberty and Freedom, Violates the 5th Amendment.

157. Defendant McClain's failure to allow Plaintiff Talleu an opportunity to review footage that would later be used against him at his criminal trials, weighing heavy on the verdicts reached in Plaintiff's trials, Violates the 5th Amendment (NOTE: this claim as stated also Violates the 6th and 14th Amendments).

158. Defendant Kistler's denial of allowing Plaintiff Talleu a right to review footage later used in his trial (criminal) [on September 3rd, 2015), of self-incriminating nature, Violates the 5th Amendment.

## 6TH AMENDMENT OF THE UNITED STATES CONSTITUTION

159. Defendant McClain's failure to assist and advice Plaintiff Talleu on how to fill out & file subpoenas, resulting in the inability of Plaintiff subpoenaing witnesses to his 5/6/2015 trial, Violated

25

the 6th Amendment's "Compulsory Clause".

CONSPIRACY

160. Defendants Williamson, Ruest, Grine, Kistler, and Lunsford's intentional entering of court orders geared to furthering the Commonwealth's malicious Prosecuting of Plaintiffs Talley, M.P. and PAD, a conspiracy carried out with these Defendants and Defendants Parks-Miller, L.C. Foster, McKenrick and DACL.

RACKETEERING INFLUENCED CORRUPT ORGANIZATION ACT

161. All of the Defendants named herein, conspired to use the Pennsylvania Judicial System as a means of extorting Plaintiffs Talley, M.P., and PAD and PAD by the filing of trumped up charges, threats of unjustified (extensive!) Prison time, being willfully blind to Perjurious testimonies & compromised evidence, entering orders adverse to criminal Procedures & rules, denying Plaintiffs of the right to self-representation, intentionally failing to employ defenses, culminating in the systematic arrival upon a guilty verdict entered by Juries Picked from venires with not one minority on them, which results in Plaintiffs Talley, M.P., and PAD having to Pay Court costs & fees; i.e., all of the herein Defendants actively, knowingly used the Pennsylvania Judicial System as a means to intimidate and extort Plaintiffs Talley, M.P., and PAD; a deliberately systematic creating of the Centre County Courthouse as a criminal enterprise for financial gain.

III (ADDITIONAL) FACTS

162. Plaintiff realleges and incorporates Paragraphs 1-through 161 by reference

163. As a direct result of the acts, omissions, and willful blindness by all of the herein named Defendants Plaintiff Talley has suffered mental and emotionally;

164. Plaintiff Talley has had recurring nightmares of being shot by some of the Judge Defendants, in open court;

165. Plaintiff Talley has been daily inflicted with a sudden fear of dealing with Persons of the caucasian race that significantly impairs his ability to cope, daily;

26

166. The traumatizing mental & emotional injury/harm Plaintiff Talley has suffered from as a direct result of the conduct of all of the herein named Defendants effects Plaintiff Talley, daily, and is ongoing, even till this day.

## IV: (ADDITIONAL) LEGAL CLAIMS

167. Paragraphs 1 through 166 are incorporated herein by reference & made part of the record.

## MENTAL AND EMOTIONAL INJURY

168. As a direct result of the acts, omissions, and willful blindness by all of the herein named Defendants Plaintiff Talley has suffered ongoing mental and emotional injury;

169. Plaintiff Talley has experienced recurring nightmares of being shot by some of the Judge Defendants, in open court;

170. As a result of the pain and suffering Plaintiff Talley has been subjected to at the hands of all the herein named Defendants (e.g., 17½ to 35 yrs prison time, having his person seized as a direct result of falsified statements, i.e., warrants) Plaintiff Talley has suffered mental & emotionally;

171. Plaintiff Talley has been inflicted with a sudden fear of dealing with (interaction, association, ect.) with Persons of the Caucasian race that significantly impairs his ability to cope on a daily basis;

172. As a direct result of the experiences which Plaintiff Talley was made (i.e., forced!) to endure at the hands of all the herein named Defendants, the psychological effect it has had upon Plaintiff Talley has traumatized Plaintiff Talley so much that he remains mentally and emotionally effect, even till this day;

173. The mental & emotional effects (i.e., pain and suffering) that Plaintiff Talley, M.P., and RAD have experienced as a result of all of the herein named Defendants acts, omissions, and willful blindness(as described herein) has been ongoing, and will continue to effect

us all, until this Court makes Defendants cease their conduct.

# I. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Tallers, M.P., and PAD respectfully pray that this Court enter Judgment:

## DECLARATORY

174. Granting Plaintiff Tallers a declaration that the acts, omissions, and willful blindness described herein violates his rights under the Constitution and laws of the United States, and

175. Granting Plaintiff M.P. a declaration that the acts, omissions, and willful blindness described herein violates their rights under the Constitution and laws of the United States, and

176. Granting Plaintiff PAD a declaration that the acts, omissions, and willful blindness described herein violates their rights under the Constitution and laws of the United States, and

## INJUNCTIVE

177. A Preliminary and Permanent Injunction ordering Defendant SCP, in it's Promulgation of Rule 568(A)(1) of the Pennsylvania Rules of Criminal Procedure, to change the "not later than the time required for filing an omnibus pretrial motion..." (i.e., the "language" of this section) to prevent past, present, and future defendants tried in any criminal proceeding within any of the Pennsylvania Court for which this Rule would have authority from being discriminated against on account of their disabilities.

178. Granting Plaintiff Tallers a Preliminary and Permanent injunction compelling Defendant DLC to promulgate a policy that obligates its personnel, contracted help, or anyone having business with the DLC when find themselves witnesses in a case regarding a prisoner to inform authorities if that prisoner has an SMI or Intellectual Disability (ID) and

179. Granting Plaintiffs Tallers and M.P. an Preliminary and Permanent injunction compelling Defendant LCC to place within their/its requirements for Jury selection language that will insure that the Juries picked in its Courthouse are diversified & that minorities are too represented within their Jury Venires, and

180. Granting Plaintiff Tallers, M.P., and PAD a Preliminary & Permanent injunction compelling Defendants DACC, CCDA, Crawley, and Parks-Miller to implement some form of training within their Offices/Departments that trains both their district attorneys and Defenders alike on how to identify "mental infirmaties" and "legal insanity",

28

181. Also, Granting Plaintiff's Taller and PAD a Preliminary and Permanent injunction Compelling Defendants CCDA & Crawlers to Promulgate sanctions and rewards sufficient to deter or encourage it's Defendants (Defenders) on Ethical Practices that facilitate ongoing & continued effective representations of it's Clients, and

182. Granting Plaintiff's Taller & PAD a Preliminary & Permanent injunction Compelling Defendants Crawler & CCDA to specifically train it's defenders on incidents in which Clients they Present or may represent may fall within the realm of "mental infirmity" or "legally insanity", how & when to identify it, and timely file this defense, and.

183. Granting Plaintiffs Taller, M.P., and PAD a Preliminary & Permanent injunction Compelling Any and All defenders employed within Defendant CCDA; since the majority of Prisoners within SCI-Benner Township and SCI-Rockview, for sometime now, to be Charged and tried within Defendant CCC are / have been African-Americans and minorities diagnosed as suffering from SMI or ID; to be obligated to inquire into whether Prisoners (from either Prison) Suffer from SMI and/or ID, and

184. Granting Plaintiff Taller a Preliminary and Permanent injunction Compelling Defendants DACC & Parks-Miller to establish training, supervision and discipline Policies Which will (a) Prevent or discourage detectives & State troopers working within Defendant PSP from Procuring Perjurious "eyewitnesses" and/or testimony/statements, and (b) that will alert it's assistant district attorney's to the falsity of such information and Prevent it's introduction as evidence.

## COMPENSATORY

185. Plaintiff Taller Prays that this Court Shall enter a compensatory damage award against Defendant DOC Compelling it to relinquish SCI-Phoenix over into the care of Plaintiff Taller; that is the Property, land, and everything that is or reasonably believed to be or of SCI-Phoenix; and

186. Plaintiff Taller Prays that this Court Shall enter a compensatory damage award against Defendant DACC, CCC set to Compel them, as municipalities & and/or funded by the County of Centre County, Pa to relinquish over into the care of Plaintiff Taller the Bellefonte Airport; and

187. Plaintiff Taller Prays that this Court Shall enter a compensatory damage award against all of the herein named Defendants Compelling the to Pay Plaintiff Taller no less

29

than $10 million, no more than $20 million for each year he was Sentenced to (17½ to 35 yrs, collectively) as a result of the ADA violations resulting in the 14th Amendment of the United States Constitution violations.

## PUNITIVE

188. Plaintiff Talley Prays that this Court Shall grant him Punitive damages against Defendants Tammy Ferguson, William Foster, Glenn Irwin, Thomas Suchta, Robert Hewitt, Thomas Gerald Lukens, David Patrick Link, Michael Worstell, Michael Lefebvre, Bernard Karabinos, Robert Williamson, Stephen Proudfit, Amy Becker, Joshua Glessner, Brian Wakefield, Thomas M. Stock, Thomas King Kistler, Jonathan D. Grine, Pamela A. Ruest, Bradley P. Lunsford, J. Michael Williamson, Stacy Parks-Miller, Lindsey Catherine Foster, Daniel McKenrick, David Crawley, Casey McClain, Gabriel Llinas, and Jeffrey A. Wagner, Jointly, in the amount of 77,777,777.77, and

189. Plaintiff Talley too Prays that this Court Shall enter whatever amount of damage, either Punitive and/or Compensatory it believes all of the herein named Defendants Should be made to Pay Plaintiffs Talley, A.P., and PhD for it's violations of the RICO Act; and

190. Plaintiff Talley also Prays that this Court Shall either a Compensatory award for damages against all of the herein named Defendants in the amount of 7,777,777.77 (Seven million seven hundred seventy-seven thousand seven hundred Seventy-seven dollars and seventy seven cent) for the mental and emotional harm that the acts, omissions, and willful blindness, as described herein, caused & continues to cause Plaintiff Talley, in favor of Plaintiff Talley.

191. Plaintiff's also seek a Jury trial on all issues triable by a Jury, and

192. Plaintiff's (especially Talley) seek's recovery for all costs in this suit, and

193. Any additional relief this Court deems Just, Proper, and equitable.
                                    Respectfully submitted,

30

## VERIFICATION

In accordance with 28 USC § 1746 : "I declare under penalty of perjury that the foregoing and all claims made herein are made to the best of my knowledge and belief. Executed this 9th day of December, 2016"

S/ ~~[illegible]~~

S/ ~~[illegible]~~
~~[illegible]~~ - KT5091
~~[illegible]~~
~~[illegible]~~

S/ September 7th, 2017

S/ Quinten Tallew

Quinten Tallew - KT5091
P.O. Box 244
Graterford, PA 19426

31

Name: Quinteo Tailev
Number: KT5091
Box 244
Graterford, PA 19426-0244

PA DEPARTMENT OF CORRECTIONS
INMATE MAIL

Hasler
09/08/2017
US POSTAGE $002.03°

ZIP 19426
011D12603070

RECEIVED
SCRANTON

SEP 12 2017

PER
DEPUTY CLERK

Attn: Clerk's office
Middle District of Pennsylvania
235 North Washington Ave.
Scranton, PA 18501